CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
SEP 0 2 2010
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| KATRINA R. MEADE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:10-cv-00024 |
| JOHNSTON MEMORIAL HOSPITAL | ) **MEMORANDUM OPINION** |
| and | ) By: Hon. Glen E. Conrad |
| JIMMY PARKS, | ) Chief United States District Judge |
| Defendants. | ) |

The plaintiff, Katrina Meade, filed this action against defendants Johnston Memorial Hospital ("JMH") and Jimmy Parks, an employee of JMH, asserting employment discrimination claims under Title VII of the 1964 Civil Rights Act ("Title VII") and under the Americans with Disabilities Act ("ADA"), an assault and battery claim, and claims for intentional and negligent infliction of emotional distress. This case is now before the court on JMH's motion to dismiss the assault and battery claim against it.[1] For the reasons set forth below, JMH's partial motion to dismiss will be granted.

I. **Factual and Procedural Background**

The following facts are taken from Meade's complaint. Meade was employed by JMH as a phlebotomist from September 4, 2007 through January 26, 2009. During this time, Parks was employed by JMH as a registered nurse, and Meade alleges that Parks "had supervisory duties over" her. (Compl. at 2.) Relevant to this motion, Meade alleges that, while both Meade and

---

[1] The plaintiff has voluntarily withdrawn her claims for emotional distress. See Plaintiff's Second Amended Complaint at 5.

Parks were "on duty," Parks on numerous occasions "pinch[ed] her on her bottom, stuck his tongue in her ear, and grabbed her face and held her still, and against her will, while he inserted his tongue in her mouth." Id. Meade's complaint asserts that Parks' conduct was committed "in the course of" and "within the scope of" Parks' employment. (Compl. at 4-5.) Meade also alleges that she told Parks during each incident that his conduct was unwanted.

Meade further claims that she reported several instances of Parks' harassing behavior to her direct supervisor, Lead Phlebotomist Jan Meddars, and to Shirley Rhoten, the Evening Shift Lab Supervisor. After first being apprised of Parks' conduct, Meddars allegedly told Meade that she would report the incidents to Terry Meadows, who was Meddars' supervisor. According to Meade, however, JMH took no action to correct the alleged harassment, despite Meade's repeated complaints to Meddars. In fact, claims Meade, Meddars eventually told her that Meadows had indicated that Meade would have to choose between keeping her job and reporting the harassment. Shortly after this last exchange between Meade and Meddars, JMH hired two additional phlebotomists to cover Meade's workload. On January 26, 2009, soon after the new phlebotomists had completed training, Meade was terminated, ostensibly for failure to come into work. Meade claims, however, that she was terminated in response to her repeated complaints about Parks' conduct.

Meade filed a complaint in this court against JMH on May 4, 2010, adding Parks as a defendant on June 14. On August 27, the court granted Meade's motion requesting that her Second Amended Complaint (the "complaint") supercede her First Amended Complaint.

Counts I and II of the complaint, alleging an ADA violation and a Title VII sexual harassment claim, respectively, are not at issue on this motion. Count III of the complaint alleges

a claim for assault and battery and is asserted against both Parks and JMH. Meade alleges that Parks' conduct constituted a battery, and additionally asserts that JMH is vicariously liable for Parks' alleged conduct pursuant to the doctrine of respondeat superior. Meade seeks a total of $1.5 million in damages, including a demand for $300,000 in compensatory damages for the alleged assault and battery, and a demand for $300,000 in punitive damages on the assault and battery claim.

JMH filed a partial motion to dismiss on June 16, 2010, seeking dismissal of the assault and battery and emotional distress claims against JMH, or, in the alternative, requesting the court to rule as a matter of law that Meade is not entitled to punitive damages on these claims. Because Meade has withdrawn her claims for emotional distress, the court will address only the viability of the assault and battery claim, as well as the attendant availability of punitive damages.

## II. Standard of Review

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," viewing the complaint in the light most favorable to the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted); see also De Sole v. United States, 947 F.2d 1169, 1171 (4th Cir. 1991). In deciding a motion to dismiss, courts may consider the complaint itself and any documents attached to it. See Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

In an action alleging employment discrimination, a claim need not include "specific facts establishing a prima facie case of discrimination" to survive a motion to dismiss, but "instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 (2002) (quotation omitted); Ray v.

Amelia County Sheriff's Office, 302 Fed. Appx. 209, 211 (4th Cir. 2008) (unpublished). A plaintiff's statement of her claim "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 551 U.S. at 93 (citations and internal quotes omitted).

Still, the complaint must contain sufficient factual allegations that, when accepted as true, the complaint "state[s] a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). Consequently, a complaint consisting of bare legal conclusions is insufficient to survive a motion to dismiss. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" or if it consists of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

Moreover, where a complaint does contain well-pleaded facts, those facts must permit the court to infer, "draw[ing] on its judicial experience and common sense," "more than the mere possibility of misconduct"; if they do not, "the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

> Accordingly, a court that is considering a motion to dismiss
>
> can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950.

### III. Discussion

#### A. Respondeat Superior Liability

JMH primarily argues that Meade's complaint fails to allege facts that are sufficient to hold JMH liable for Parks' conduct pursuant to the doctrine of respondeat superior. Under Virginia law, an employer is liable under the doctrine of respondeat superior for an employer's tortious conduct where the activity that gave rise to the tortious act was within the scope of the employment. Commercial Business Systems, Inc. v. Bellsouth Services, Inc., 453 S.E.2d 261, 265 (Va. 1995). If the plaintiff has shown that an employment relationship exists, the employer bears the burden of proving that its employee was not acting within the scope of his employment when he committed the tortious act. Gina Chin & Assocs., Inc. v. First Union Bank, 537 S.E.2d 573, 578 (Va. 2000). In determining whether particular employee conduct was within the scope of employment, Virginia case law makes it clear that an employer may be held liable even if the conduct was not undertaken with the intent of furthering the employer's interest. Id. at 577. Rather, the relevant test to determine whether particular conduct is within the scope of employment is "whether the service itself, in which the tortious act was done, was within the ordinary course of the employer's business." Blair v. Defender Services, Inc., 386 F.3d 623, 627

(4th Cir. 2004) (citations omitted).

Accordingly, respondeat superior liability "may be imposed, for example, where a supervisor is engaged in workplace duties or functions." Jones v. Tyson Foods, Inc., 378 F. Supp. 2d 705, 713 (E.D. Va. 2004). Employers may also be held vicariously liable for an employee's harassing conduct when the employee engaged in the conduct as he "execut[ed] the service for which he was engaged." Plummer v. Center Psychiatrists, 476 S.E.2d 172, 174 (Va. 1996) (holding that respondeat superior liability could lie where a psychiatrist had engaged in sexual relations with a patient he was treating) (citation omitted). See also Majorana v. Crown Cent. Petroleum Corp., 539 S.E.2d 426, 429 (Va. 2000) (holding that the plaintiff had stated the necessary elements triggering respondeat superior liability where she alleged that an employee of a gas station had lunged from behind the counter and sexually assaulted her while she was attempting to pay for her gas purchase). Respondeat superior liability may not, however, be imposed "solely on allegations that the harassment took place at the work place and during work hours." Tyson Foods, 378 F. Supp. 2d at 713.

At least two federal courts have recently applied Virginia law in the context of workplace assaults. In Tyson Foods, the plaintiff alleged that her co-worker had supervisory authority over her and that, during work hours, the co-worker had invited the plaintiff into his office, closed the door, asked her to date him, and "grab[bed] her buttocks, pulled her toward him, pressed his pelvic area into hers, and simulated the act of sexual intercourse." 378 F. Supp. 2d at 710. The United States District Court for the Eastern District of Virginia held that these allegations failed to establish Tyson Foods' respondeat superior liability because the activity that gave rise to the tortious act was not within the scope of the defendant's employment: "Defendant Clarke was not

engaged in his workplace duties or functions when he asked Plaintiff on a date, attempted to kiss her, and touched her inappropriately." Id. at 714.

The Fourth Circuit came to a similar conclusion in Blair, 386 F.3d at 628. The plaintiff in Blair was a student at Virginia Tech who alleged that a custodial employee of Defender Services had forcibly assaulted her in a campus bathroom. The Court held that "[w]hen Harris embarked on independent acts to attack Blair, he clearly acted outside the scope of his employment. We hold that this act was so great a deviation from Defender's business that the District Court correctly granted Defender's motion for summary judgment on the respondeat superior liability claim as a matter of law." Blair, 386 F.3d at 628.

In the case at bar, the only factual allegation relating to whether Parks' conduct occurred within the scope of his employment is Meade's claim that Parks and Meade were both "on duty" at the time of the alleged harassment. But it is clear that the mere fact that the harassment occurred at the workplace does not by itself give rise to respondeat superior liability. See Tyson Foods, 378 F. Supp. 2d at 713. Most significantly, Meade's complaint fails to allege that Parks engaged in the harassing conduct in connection with his execution of the duties for which he was hired. Cf. Majorana, 539 S.E.2d at 429. Nowhere has Meade claimed that Parks' conduct had any relation to any of his duties as a registered nurse. Meade has not alleged, for example, that Parks' harassment occurred while he was assisting patients, managing medications, or in any way interacting with Meade in connection with his alleged "supervisory duties" over her. Meade has not even made any allegations regarding any particular location where Parks' conduct allegedly occurred. On the contrary, Meade has alleged only that, during work hours, Parks engaged in a pattern of sexual batteries against Meade, his colleague.

It is clear on any interpretation that this conduct constituted an independent act that grossly deviated from Parks' workplace duties and functions as a registered nurse. See Blair, 386 F.3d at 628. Any attempt to analogize to Majorana and Plummer must therefore fail. The employers in Majorana and Plummer were deemed potentially liable only because their employees were actually conducting, as the harassment occurred, the "service[s] for which [they were] engaged," Plummer, 476 S.E.2d at 237; namely, taking payment from gasoline customers, and providing counseling and therapy services. There are no such allegations here.

Meade's attempts to distinguish this case from Tyson Foods are also ineffective, as it is indisputable that the assault in Tyson Foods could also be characterized as having occurred while both parties were "on duty." 378 F. Supp. 2d at 710 (noting that the assault occurred during work hours). Of course, Meade's baldly conclusory allegation that Parks' harassing conduct occurred "in the course of" and "within the scope of" his employment does not suffice to defeat a motion to dismiss. Twombly, 550 U.S. at 555. The court therefore is constrained to conclude that Meade's complaint fails to sufficiently allege that Parks' conduct occurred within the scope of his employment.

B.  Ratification Liability

Meade argues, however, that vicarious liability should be imposed upon JMH because it ratified Parks' conduct when it failed to take corrective action after receiving notice of Parks' behavior. In support of her argument that Virginia law imposes vicarious liability upon a showing of ratification, Meade cites only one Virginia case: Rockingham Mutual Ins. Co. v. Davis, 58 Va. Cir. 466, 2002 WL 737474 at *4 (Va. Cir. Ct. 2002). But Rockingham Mutual is not directly on point, as the court in that case held only that an insurance company need not

defend an employer who was alleged to be liable under the doctrine of respondeat superior for his employee's sexual harassment of another employee. Id. The court did not reach the question of whether the employer could be vicariously liable on a theory of ratification, nor whether the employer's inaction in response to his employee's conduct was sufficient evidence of the employer's intent to ratify the tortious act.

To be sure, there is some suggestion other than in Rockingham Mutual that an employer's ratification of an employee's tortious act—even if committed outside the scope of his employment—could give rise to vicarious liability in Virginia courts. See, e.g., Jacobson v. Kirn, 64 S.E.2d 755, 760-61 (Va. 1951) (refusing to impose vicarious liability where the plaintiff had failed to demonstrate that the employer "acquiesced in or ratified" an employee's independent conduct); Cobbs v. Commonwealth, 55 Va. Cir. 1, 2001 WL 322728, at *6 (Va. Cir. Ct. 2001) (same). However, the Virginia Supreme Court has not cited this common law principle for over fifty years, even while demarcating the boundaries of modern workplace harassment law. See, e.g., Chin, 537 S.E.2d at 576-77 (discussing only whether an employee's act was within the scope of his employment). Foundational to the common law rule of ratification liability, moreover, is "the assumption that the wrongdoing employee, although acting in an unauthorized way, was acting either actually or professedly on behalf of a principal. . . . [T]his requirement is the one condition of ratification that all cases and commentaries seem to agree upon." Anthony W. Kraus, Ratification of Torts: An Overview and Critique of the Traditional Doctrine and Its Recent Extension to Claims of Workplace Harassment, 32 TORT AND INS. L. J. 807, 828 (1997). See Clinchfield Coal Corporation v. Redd, 96 S.E. 836, 841 (Va. 1918) (finding that the defendant ratified the subordinate's actions where the subordinate "intended what he did for the

benefit of the defendant"); Henry Myers & Co. v. Lewis, 92 S.E. 988, 994-95 (Va. 1917). Similarly, under common law agency principles, "[r]atification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done <u>on his account</u>, whereby the act, as to some or all persons, is given effect as if originally authorized by him." RESTATEMENT (SECOND) OF AGENCY § 82 (emphasis added). See also Holstein-Harvey-Kirk Co. v. H. Kirk & Sons, 142 S.E. 373, 375 (Va. 1928). But see Chin, 537 S.E.2d at 577 (holding that an employee's motive is irrelevant when determining whether his conduct was within the scope of his employment).

Inasmuch as a workplace harasser often acts for his own benefit rather than for his employer's, it is therefore not obvious that the common law doctrine of ratification extends to the particular type of employee misconduct at issue in this type of case. Nor is it dispositive that some other jurisdictions have recognized the doctrine of ratification as a potential avenue to employer liability for state law tort claims alleging workplace harassment. See, e.g., Hatley v. Hilton Hotels Corp., 308 F.3d 473, 476 (5th Cir. 2002) (recognizing that, under Mississippi law, ratification of workplace harassment could serve as a basis for employer liability on a state law tort claim); Prunty v. Arkansas Freightways, 16 F.3d 649, 653 (5th Cir. 1994) (noting that Texas law supports the same theory); Jackson v. Kimel, 992 F.2d 1318, 1322 (4th Cir. 1993) (applying North Carolina law on the same theory).

Meade has not cited any of these legal authorities, and it is unclear from her submissions to the court whether she even claims that ratification may independently give rise to employer

liability.[2] To the extent that Meade has alleged ratification as an independent basis of liability, however, the court observes that—even assuming that Virginia law imposes liability upon an employer who ratifies an employee's extra-employment tortious conduct—her complaint fails to allege the degree of ratification that would be required to impose vicarious liability upon JMH under Virginia law.

As a baseline principle, it is clear that, under Virginia law, an employee's conduct is ratified by the employer only if the employer has factual knowledge of the employee's conduct. See Jacobson, 64 S.E.2d at 761. Moreover, Virginia courts typically find that ratification has occurred only where the employer has "expressly" confirmed the conduct or acted affirmatively in response to it. See Tri-State Coach Corp. v. Walsh, 49 S.E.2d 363, 368 (Va. 1948) ("There is no evidence or claim that [the employer] expressly authorized or ratified this tort."); Doe v. Bruton Parish Church, 42 Va. Cir. 467, 1997 WL 33575565, at *3 (Va. Cir. Ct. 1997) (Lemons, J.) (holding that the plaintiff's allegations that the defendant church members had conspired to misrepresent and ignore the conduct of a sexually-harassing pastor were not legally sufficient to state that the church had ratified the pastor's conduct); Meyer v. Dominion Bank, 1992 WL 884824, at *2 (Va. Cir. Ct. 1992) (finding that the defendant did not ratify fraud even though it accepted the benefits, failed to respond to notices, and refused to take any corrective action); Timchak v. Ogden Allied Services, Corp., 24 Va. Cir. 70, 1991 WL 834940 at *2 (Va. Cir. Ct. 1991). See also Fellerman v. American Retirement Corp., No. 03:09-CV-803010, WL 1780406, slip op. at *7 (E.D. Va. 2010) (finding that the employer had ratified its employees' tort when it

---

[2]Notwithstanding her brief, Meade's counsel conceded during the hearing on this motion that, if the court held as a matter of law that Parks' conduct was outside the scope of his employment, then Meade's assault and battery claims must fail.

11

destroyed and falsified records in order to cover up the tortious conduct). Accordingly, the mere retention of an employee, without other evidence, does not amount to ratification of the employee's tortious conduct. See Pullman Co. v. Hall, 46 F.2d 399, 404 (4th Cir. 1931) (applying federal general common law).

Against this framework, Meade's allegations, even when viewed in the light most favorable to her, fail to state a plausible claim that vicarious liability should be imposed upon JMH under the facts of this case. Twombly, 550 U.S. at 570. Not only has Meade failed to allege that the alleged harassment was brought to the attention of supervisors who were properly authorized and able to curb Parks' behavior, see Jacobson, 64 S.E.2d at 761, but JMH's mere inaction in response to being apprised of Parks' conduct is in any event insufficient to support a claim of express ratification. See Tri-State Coach Corp., 49 S.E.2d at 368. The bare allegation that Parks was retained while Meade was terminated is likewise insufficient, without more, to show that JMH affirmatively and expressly adopted Parks' particular conduct, as required under Virginia law. Meade has cited no controlling legal authority suggesting the contrary. To the extent that Parks' motive is relevant to the issue of ratification, moreover, it is clear from the face of the complaint that Meade in no way alleges that Parks intended his conduct to benefit JMH.

Because Meade's complaint does not sufficiently state either that Parks' conduct occurred within the scope of his employment or that JMH ratified Parks' behavior, the court concludes that Meade's allegations fail to sufficiently state a claim that JMH is vicariously liable for Parks' conduct. Meade's claim against JMH for assault and battery must therefore be dismissed.

C.  <u>Punitive Damages</u>

Because the court concludes that Meade's claim against JMH for assault and battery must be dismissed, it is not necessary to reach the parties' arguments regarding JMH's liability for punitive damages upon that claim.

IV. **<u>Conclusion</u>**

For the foregoing reasons, the court will grant the partial motion for summary judgment filed by JMH.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 20 day of September, 2010.

*[signature]*
Chief United States District Judge